IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEMETRIUS BRYANT,

      Plaintiff,                    No. 2:11-cv-1115 EFB

     vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                 ORDER

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

I. BACKGROUND

      Plaintiff filed for SSI benefits on December 31, 2006. AR 79. His application was denied initially and upon reconsideration. *Id*. at 81, 89. On October 8, 2008, a hearing was held before administrative law judge ("ALJ") Theodore Slocum. *Id*. at 24. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert (VE) testified. *Id.* at 24-78.

1

On February 2, 2009, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the act.[1] *Id.* at 10-18. The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since December 31, 2006, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease, hypertension, obesity, and history of substance abuse in remission (20 CFR 416.921 *et seq*.).
>
> ...
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

2

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally climb, balance, stoop, kneel, or crouch and never crawl.

...

5. The claimant is unable to perform any past relevant work (PRW) (20 CFR 416.965).

...

6. The claimant was born [in] 1961 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

...

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 31, 2006, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 12-18.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 5-6. However, on February 24, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id*. at 1-3.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred in failing to (1) properly credit the opinion of plaintiff's treating physician, (2) properly credit plaintiff's testimony and third party statements regarding plaintiff's functional limitations, and (3) consider the VE's response to a hypothetical that accurately reflected plaintiff's limitations.

    A.    <u>The ALJ Provided Specific and Legitimate Reasons for Rejecting the Treating Physician's Opinion</u>

Plaintiff argues that the ALJ erred by failing to properly credit the opinions of his treating physician. Pl.'s Mot. for Summ. J., Dckt. No. 19 at 12-15. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical

4

findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Ly, one of plaintiff's treating physicians, first saw plaintiff in July 2007, and completed a medical report on August 13, 2007.[2] AR at 248. Dr. Ly observed that plaintiff had abnormal spinal curvature, and she diagnosed plaintiff with degenerative disc disease. *Id*. She opined that plaintiff could lift/carry ten pounds occasionally, sit for four hours, stand for two hours, walk for one hour, needed a ten minute break every hour, and would need to lie down for one hour during an eight hour workday. *Id*. at 249-250. She further opined that plaintiff could occasionally climb, balance, stoop, crouch, and kneel, but never crawl. *Id.* at 249-252. In reaching her opinion, Dr. Ly stated that plaintiff was unable to lift more than 10 pounds without experiencing pain, plaintiff leaned while he sat, he had a slower than average gait, and he claimed to be uncomfortable while standing. *Id.*

Dr. Jaojoco, a consulting examining physician, diagnosed plaintiff with chronic lumbar pain. *Id*. at 225. Dr. Jaojoco observed that, while plaintiff complained of great pain in completing the physical tests, plaintiff seemed to give poor effort and exhibited Waddell's

---

[2] The medical report includes a physical medical assessment, which is dated August 1, 2007. AR at 252.

5

1 signs.[3] *Id.* at 224-25.  Dr. Jaojoco found that with prodding, plaintiff had 5/5 strength in both
2 upper extremities and both lower extremities. *Id*. at 224.  Dr. Jaojoco opined that plaintiff could
3 lift/carry 25 pounds occasionally, 15 pounds frequently, stand and/or walk for six hours, sit
4 without restrictions, and occasionally climb, bend, stoop and crouch, with no crawling. *Id.* at
5 225.

6      Also included in the record is the opinion of Dr. Pong, a non-examining state agency
7 consultant. *Id.* at 253-60.  Dr. Pong opined that plaintiff could lift and/or carry 20 pounds
8 occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8 hour day, sit for 6
9 hours in an 8 hour day, and occasionally climb, balance, stoop, kneel, crouch and crawl. *Id.*
10 The record also contains a Physical Residual Functional Capacity Assessment competed by Dr.
11 Jansen, a state agency non-examining physician.  It was Dr. Jansen's opinion that plaintiff could
12 lift 20 pounds occasionally and 10 frequently, stand and/or walk 6 hours in an 8-hour workday,
13 and sit for 6 hours in an 8-hour workday. *Id*. at 229.  Dr. Jansen also opined that plaintiff could
14 climb and stoop frequently; occasionally stoop, kneel, and crouch; but could never crawl. *Id*. at
15 231.

16      In assessing the record, the ALJ gave "great weight to the findings and conclusions of"
17 Dr. Pong, as supported by Dr. Jaojoco's findings and the record, while giving "no weight [to the
18 opinion of Dr. Ly], except with respect to . . . [plaintiff's] postural limitations, as . . . . [Dr. Ly's
19 findings were] inconsistent with the evidence." *Id.* at 16.  Thus, the ALJ rejected the treating
20 physician's opinion. *Id.*  Plaintiff argues that this constituted error because the ALJ failed to
21 provide legally sufficient reasons for rejecting Dr. Ly's opinion.  Pl.'s Mot., Dckt. No. 19 at 15.
22 Because Dr. Ly's medical opinion was contradicted by the opinions of Drs. Jaojoco and Pong,
23 the ALJ was required to give "specific and legitimate" reasons for rejecting Dr. Ly's opinion.
24 *See Orn*, 465 F.3d at 632.

---

26    [3] Waddell signs are used to detect malingering.

1    In rejecting Dr. Ly's opinion, the ALJ observed that Dr. Ly had only recently begun
2 treating plaintiff at the time she provided her assessment of plaintiff's limitations. AR at 16. As
3 discussed above, an opinion from a treating source is generally afforded greater weight because a
4 treating physician has a better opportunity to known and observe the patient. *Smolen*, 80 F.3d at
5 1985. However, in deciding what weight to give a treating-source opinion, an ALJ may consider
6 the length of the treatment relationship and the frequency of examination. 20 C.F.R.
7 § 404.1527(c)(2)(I); *see also Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Here,
8 the ALJ specifically observed that Dr. Ly had only seen plaintiff on two occasions at the time
9 she completed her assessment. AR at 16. Plaintiff does not dispute this findings. Given the
10 limited treating relationship, the ALJ was permitted to accord less weight to Dr. Ly's
11 contradicted medical opinion.

12    The ALJ also rejected Dr. Ly's opinions because it was primarily based on plaintiff's
13 subjective complaints with only minimal findings noted. *Id*. at 16. The opinion of a treating
14 physician may be rejected where it is premised primarily on plaintiff's subjective complaints and
15 the ALJ properly discounted plaintiff's credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149
16 (9th. Cir. 2001). However, "an ALJ does not provide clear and convincing reasons for rejecting
17 an examining physician's opinion by questioning the credibility of the [plaintiff's] complaints
18 where the doctor does not discredit those complaints and supports his ultimate opinion with his
19 own observations." *Ryan v. Comm'r of Soc. Sec. Admin*, 528 F.3d 1194, 1200-01 (9th Cir.2008).
20 Plaintiff argues that the record does not support the ALJ's finding that Dr. Ly primarily relied on
21 plaintiff's statements to assess his functional limitations. Dckt. No. 19 at 16. A review of the
22 record, however, supports the ALJ's finding that Dr. Ly relied on plaintiff's subjective
23 complaints and supported her assessment with only minimal findings. In determining that
24 plaintiff could only occasionally lift up to 10 pounds, Dr. Ly noted that plaintiff experienced
25 pain when lifting more than 10 pounds, but did not note any objective or clinical finds. AR at
26 249. Dr. Ly's opinion regarding plaintiff's sitting and standing limitations were also based on

limited medical findings. Dr. Ly observed that plaintiff leaned forward and had a slower than overage gait. *Id*. at 250. She noted, however, that plaintiff claimed to be uncomfortable while standing. *Id*. Moreover, in a Complete Medical Report dated August 13, 2007, the only clinical finding made by Dr. Ly was "abnormal spinal curvature." *Id*. at 248. As for laboratory findings, Dr. Ly stated that no X-rays had been done at the clinic, but she "attempted to get X-Ray reports." *Id*. Based on this evidence, the court cannot find that the ALJ erred in concluding that Dr. Ly's opinion was primarily based on plaintiff's subjective complaints with only minimal findings noted. Furthermore, as explained below, the ALJ properly discounted plaintiff's credibility. Accordingly, the ALJ provided specific and legitimate reasons for rejecting Dr. Ly's opinion.[4]

> B.   The ALJ Properly Rejected Portions of Plaintiff's Testimony and Third Party Statements

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting his testimony and the statements of third parties. Dckt. No. 19 at 18-22. In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).
////

---

[4] The ALJ also rejected Dr. Ly's opinion because recent treating records noted no significant objective findings, and Dr. Ly also noted that plaintiff runs out of medication despite his complaints of pain. As the ALJ properly rejected Dr. Ly's opinion on other grounds, the court declines to address the legal sufficiency of these additional reasons.

8

Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

In rejecting plaintiff's testimony, the ALJ found that there were inconsistencies on examination. AR at 15. The ALJ observed that while an MRI supported the diagnosis of degenerative disk disease, plaintiff "has no significant atrophy, neurological deficits, radicular pain, weakness, reflex absence, or deceased sensation." *Id*. at 16. The ALJ also noted that during plaintiff's examination with Dr. Jaojoco, he exhibited Waddell's signs and failed to give his full effort in completing the exam, suggesting that plaintiff was exaggerating his symptoms. *Id*. at 16. Plaintiff argues that this was not a permissible basis for rejecting his testimony because Dr. Jaojoco only examined plaintiff once and did not have plaintiff's medical records. Dckt. No. 19 at 19. First, it is not entirely clear how the absence of plaintiff's medical records influenced Dr. Jaojoco's observation that plaintiff failed to give his full effort during examinations. Furthermore, the finding that plaintiff exaggerated his symptoms on one occasion calls into questions plaintiff's veracity, which is an appropriate consideration in assessing credibility. *See Smolen*, 80 F.3d at 1284.

The ALJ further noted that there were gaps—including one spanning more than a month—in which plaintiff did not take his medication as directed. AR at 16. Plaintiff claims

9

1  that the record as a whole does not show a pattern of inconsistent treatment. Dckt. No. 19 at 20.
2  While this statement may be true, the fact that plaintiff was able to go more than a month without
3  pain medication tends to indicate that his complaints of pain were not as debilitating as alleged.
4  Furthermore, the ALJ's findings are slightly bolstered by his own observations that plaintiff did
5  not seem to exhibit significant pain or discomfort during the hearing, which may be accorded
6  some weight so long as the ALJ's observations are not the sole basis for a finding against
7  credibility. *See Morgan*, 169 F.3d at 600. The ALJ specifically stated that he only afforded this
8  observation little weight, making it an appropriate consideration. *Id.* Contrary to plaintiff's
9  assertion, the ALJ provided legally sufficient reasons for discounting his testimony.

10  Plaintiff also argues that the ALJ rejected the statements of Latrina Davis, plaintiff's
11  daughter, and Levon Davis, plaintiff's son-in-law, without sufficient justification. An ALJ may
12  not reject the opinions of lay witnesses without providing reasons that are germane to each
13  witness. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693-94 (9th Cir. 2009). Ms.
14  Davis stated that plaintiff is limited in his ability to lift heavy items, can only walk about 100
15  feet, and does not have the ability to sit or stand in the same position for a prolonged period of
16  time. *Id*. at 269. Mr. Davis stated that plaintiff cannot keep still and must frequently change
17  positions. *Id*. at 270. The ALJ gave multiple reasons for rejecting the statements provided by
18  Latrina Davis and Levon Davis. Notably, the ALJ rejected their statements because they were
19  not consistent with the objective clinical findings.[5] This is a germane reason for rejecting lay-
20  witness statements. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)
21  ("Inconsistency with medical evidence is one such reason [to reject lay-witness statements].").

---

[5] The ALJ also observed that Ms. Davis may not be credible because she lives with plaintiff and may have a financial interest in plaintiff obtaining benefits. The possibility that a lay witness may have a financial interest in the outcome is not a sufficient basis for rejecting his or her statement. *See Valentine*, 574 F.3d at 694; *see also Howard v. Astrue*, ED CV 07-1523-PLA, 2009 WL 385441, * 4 (C.D. Cal. Feb. 17, 2009) (holding that the fact that a lay witness is a family member and could potentially have a financial interest is not a sufficient basis for rejecting his or her testimony).

10

Plaintiff argues, however, that the rejected statements "were completely consistent with the opinions of the treating physician, consistent with [plaintiff's] testimony, consistent with the objective evidence, and consistent with the record as a whole." Dckt. No. 19 at 22. As explained above, the ALJ properly rejected Dr. Ly's opinion and plaintiff's testimony. Further, in his decision, the ALJ discussed the relevant objective medical evidence, included x-rays and MRI findings, and concluded that such evidence was consistent with the opinions of Drs. Pong and Jaojoco. *Id*. at 14-16. The statements provided by plaintiff's daughter and son-in-law, however, are inconsistent with these physicians' opinions and Dr. Jaojoco's findings, which the ALJ found to be credible. *Id*. at 16. As the third-party statements were inconsistent with the medical evidence in the record, the ALJ properly discredited the statements.

Additionally, the statements provided by plaintiff's daughter and son-in-law were similar to plaintiff's subjective complaints. As previously discussed, the ALJ properly discredited plaintiff's subjective testimony. Given that the ALJ gave legally sufficient reasons for rejecting plaintiff's testimony regarding his subjective complaints and that his daughter and son-in-law's statements merely substantiate his complaints, it follows that the ALJ provided a germane reason for discrediting these lay-witness statements. *See Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [plaintiff's] own subjective complaints, and because [lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.") Thus, the ALJ did not err in failing to credit Latrina Davis and Levon Davis's statements.

C. The ALJ Did Not Err in Failing to Credit the VE Testimony

Plaintiff argues that the ALJ committed prejudicial error by failing to credit the VE's testimony in response to a hypothetical that accurately included plaintiff's functional limitations. This argument is based on plaintiff's contention that the ALJ erred in failing to properly evaluate Dr. Ly's opinion as well as plaintiff's testimony and third-party statements. As explained above, the ALJ did not err in rejecting this evidence. Accordingly, the ALJ was not required to credit

11

the VE's response to a hypothetical that included such limitations.

IV. CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence and is based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 25, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE